UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JODY CARR,<br><br>    Plaintiff,<br><br> v.<br>WARDEN CARLYN, SGT. HIGGENS, D.W. YORDY, D.W. COBURN, WARDEN RANDY BLADES, DR. BABICH, DR. WHINNERY, N.P. RORY YORK, TINA WILLIAMS, SHELLY MALLET, CORIZON MEDICAL, and IDOC,<br><br>    Defendants. | Case No. 1:14-cv-00125-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it several motions. As explained below, the Court will grant summary judgment in favor of all defendants, and dismiss this case in its entirety.

## BACKGROUND

Carr is a prisoner in the custody of the Idaho Department of Corrections. He alleges that in November of 2011, while incarcerated at Idaho Correctional Institution-Orofino (ICI-O), he became ill with an antibiotic resistant strain of "C- Diff" and had severe, bloody diarrhea for several months that went untreated and left him permanently

**MEMORANDUM DECISION AND ORDER - 1**

underweight and incontinent. He alleges that when he became ill at ICI-O he filed Medical Care Request Forms, but Defendant York, a nurse practitioner, refused to see him for approximately 60 days. Carr further alleges that when York finally examined him, York diagnosed him as suffering from hemorrhoids and gave him hemorrhoid cream. Thus, York examined Carr, determined a diagnosis, and provided him with treatment.

Carr also filed a separate lawsuit, *Carr v. Higgins et. al.* (Case No. 1:13-cv-00380-REB), in which he alleged that a correctional officer told him that another correctional officer had put human feces in Plaintiff's food in November 2011, and that Carr learned this information within a few days of when he alleges he ate the feces-laced food. Carr further alleges that he became immediately and violently ill. However, it appears that Carr withheld the information that he may have consumed human feces from York and other medical providers. Thus, Carr went to his medical providers with an uncommon illness, the medical providers had no reason to believe he had been exposed to feces-laced food, and they followed a regular course of attempting to diagnose the problem. The other case was ultimately dismissed on summary judgment in favor of the defendants.

Carr also states that in February or March of 2012, he was seen by a doctor who diagnosed him with "C-Diff" and prescribed him an antibiotic, which he claims did not work. He states that he repeatedly asked ICI-O Warden Carlyn for help during this time period, but did not receive any help. Carr further alleges that prison officials failed

**MEMORANDUM DECISION AND ORDER - 2**

to protect him from assault, and that prison officials violated his right to send and receive mail.

Upon review of Carr's Amended Complaint, the Court allowed Carr to proceed with the following claims: (1) Eighth Amendment deliberate indifference medical care claim against Rory York; (2) Eighth Amendment deliberate indifference medical care claims against Dr. Whinnery, Tina Williams, and Shelly Mallet; (3) Eighth Amendment interference with medical care claim against Sergeant Higgins; (4) First Amendment mail interference claim against Officer Maddox and Lieutenant Woodland; (5) Eighth Amendment failure to protect claim against Physician's Assistant Valley, Sergeant Link, Sergeant Carter, and Lieutenant Aiello; and (6) First Amendment free speech claim against Sergeant Mechtel. The claims are now before the Court on summary judgment, except the claim against Rory York, who passed away on March 12, 2014. Dkt. 32.

## ANALYSIS

1.  **Corizon Defendants (Dr. Whinnery, Williams, Mallet, and Valley) are Entitled to Summary Judgment.**

Inmates must exhaust their available administrative remedies before bringing civil rights actions based on prison conditions. The federal Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies for all federal claims brought by state prisoners who challenge the conditions of their confinement in a federal complaint. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion must be proper; meaning "a

**MEMORANDUM DECISION AND ORDER - 3**

prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Idaho law also requires that prisoners exhaust administrative remedies before proceeding with civil lawsuits. Idaho Code § 19–4206(1). The Idaho Court of Appeals has interpreted this statutory provision to require exhaustion for all civil actions related to conditions of confinement. *Drennon v. Idaho State Corr. Inst.*, 181 P.3d 524, 526 (Idaho Ct.App.2007). Likewise, Idaho requires that the prisoner meet procedural deadlines to exhaust administrative remedies properly. *Butters v. Valdez*, 241 P.3d 7, 12 (Idaho Ct.App.2010) (Relying on federal law interpreting 42 U.S.C. § 1997e(a)).

In the Ninth Circuit, a claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2002). Defendants have the burden to plead and prove exhaustion, and the reviewing court may look beyond the pleadings to resolve disputed issues of fact, if necessary. *Id*.

Here, the Corizon defendants have brought such a motion, and they have met their burden. IDOC's grievance procedure for inmates is set forth in Defendants' statement of facts and supporting affidavits. *See Pitzer Aff.*, ¶ 3, Dkt. 52-3. The IDOC grievance

**MEMORANDUM DECISION AND ORDER - 4**

process is contained generally in IDOC Policy 316: Offender Grievance Process. The grievance procedure is contained in IDOC Division of Prisons Standard Operating Procedure 316.02.01.001. *Id.,* Ex. A-1, Dkt. 52-4.

The IDOC grievance procedure consists of three stages. *Id.* ¶ 5, Dkt. 52-3. First, an inmate must seek an informal resolution by filling out an Offender Concern Form, addressed to the most appropriate staff member. If the issue is not informally resolved at this stage, the inmate must file a Grievance Form. The Grievance Form must be submitted within 30 days of the incident giving rise to the grievance. *Id.* The inmate must attach a signed Offender Concern Form showing the inmate's attempt to settle the issue informally. Moreover, grievances must contain "specific information including nature of the complaint, dates, places, and names," and only one issue may be raised in each grievance. *Id.*, ¶ 6. The grievance information is then entered into the Corrections Integrated System, and the Grievance Coordinator assigns the grievance "to the staff member most capable of responding to and, if appropriate, resolving the issue." *Id.* That staff member responds to the grievance and returns it to the Grievance Coordinator.

The Grievance Coordinator then forwards the grievance to a "reviewing authority" unless it's a medical issue, in which case it is forwarded to the facility Health Services Administrator. *Id.* The reviewing authority returns the grievance to the Grievance Coordinator, who logs the response into the database and sends the completed grievance back to the inmate. *Id.* ¶ 7. When the grievance involves a medical issue, the grievance is routed through facility medical staff employed by a health care contractor. *Id.* An inmate may appeal an unsatisfactory decision. *Id.*, ¶ 8. A facility head then decides the inmate's

**MEMORANDUM DECISION AND ORDER - 5**

grievance appeal. If it is a medical grievance the Health Services Director is the appellate authority. After the appeal is decided, the Grievance Coordinator returns the completed appeal form to the inmate. *Id*. The grievance process is exhausted at the end of all three of these steps. *Id*., ¶ 9.

Here, Carr filed only one medical grievance (Grievance IO120000119) between March 1, 2012 and January 20, 2015. It does not exhaust the claims asserted against Dr. Whinnery, Williams, or Mallet. First and foremost, Carr did not identify these defendants as required by the IDOC grievance policy. *Id.*, ¶ 6. In fact, the grievance form was submitted before these defendants were even involved in the matter. In his grievance, Carr asserts that he did not receive pain medications or evaluation by a doctor for his diarrhea complaints. But in his Amended Complaint, he asserts that Dr. Whinnery, Williams, and Mallet improperly placed him in administrative segregation, prescribed inappropriate medications, and refused to give him proper care. These are not part of the grievance he submitted to IDOC. And regarding defendant PA Valley, Carr's non-medical grievances after he was apparently assaulted do not reference Valley or anyone else on the healthcare staff. *Id.*, ¶¶ 12-14. As explained above, the IDOC grievance policy requires an inmate to identify the individuals against whom the inmate has a grievance. Accordingly, Carr failed to exhaust his administrative remedies against the Corizon medical defendants. *Id.*, ¶ 6. Accordingly, the Court will grant summary judgment in their favor.

2.  **IDOC Defendants (Higgins, Aiella, Link, Carter, Mechtel, Woodland, and Maddox) are Entitled to Summary Judgment.**

**MEMORANDUM DECISION AND ORDER - 6**

Carr failed to exhaust his administrative remedies against defendants Higgins, Aiella, Link, Carter and Mechtel. And he failed to state a claim against defendants Woodland and Maddox.

a. **Defndants Higgins, Aiella, Link, Carter, and Mechtel**

The PLRA requirement that an inmate exhaust his administrative remedies, and IDOC's grievance procedure, are explained in detail just above. The Court will not repeat them hear, but that same standard applies. The Court finds that Defendants Higgins, Aiella, Link, Carter, and Mechtel have met their burden of showing Carr did not exhaust his administrative remedies.

First, in his Amended Complaint Carr generally alleges that Defendant Higgins obstructed his right to medical treatment while he was housed at ISCI between April 26, 2012 and December 11, 2012 and again between February 5, 2013 and April 9, 2013. But Carr did not submit any grievances while he was housed at ISCI between April 15, 2012 and December 11, 2012 or within thirty days thereafter as required by the grievance procedure. *Pitzer Decl.,* ¶20, Ex. E, Dkts. 73-7 and 73-10. The same is true for the period of February 5, 2013 to April 9, 2013 and thirty days thereafter regarding being prevented from receiving medical care. *Id.* ¶ 21, Exs. E and F, Dkts. 73-7 and 73-10.

Regarding Defendants Link, Aiello and Carter, Carr generally alleges they failed to protect him from an assault on September 20, 2014. Within 30 days of that alleged assault, Carr submitted four grievances. All four were screened by the IMSI grievance coordinator and returned without action pursuant to the IDOC grievance procedure because they did not comply with the grievance guidelines. *Id.*, ¶ 23, Ex. H, Dkt. 73-11.

**MEMORANDUM DECISION AND ORDER - 7**

The return slip indicates that Carr raised more than one specific issue per grievance, and that he failed to write it in concise and understandable language. *Id.* This is not unlike some of the briefing before the Court, and the Court agrees that it is not understandable or in line with the grievance guidelines. Thus, Carr failed to properly exhaust available administrative remedies with respect to his failure to protect claims under the Eighth Amendment against Link, Aiella, and Carter.

The same is true for Carr's claims against Defendant Mechtel. According to the evidence before the Court, Carr submitted three grievances in October of 2013 complaining about Mechtel. Similar to the grievances against Link, Aiella, and Carter, the grievance coordinator screened and rejected these grievances. *Id.*, ¶ 22, Exs. E and G, Dkt. 73-10. Like his other grievances, these were returned to Carr with an explanation about why they were not processed – raised more than one issue, no clear description, no dates, etc. *Id.* Under these circumstances, the Court will dismiss the claims against Higgins, Link, Aiella, Carter, and Mechtel because Carr failed to exhaust his administrative remedies as to these defendants.

      b.    **Defendants Woodland and Maddox**

As a prison inmate, Carr retains the First Amendment right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "[H]owever, [] these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Id.*, *citing Turner v. Safley*, 482 U.S. 78, 84 (1987). A prison regulation affecting outgoing or incoming mail need not satisfy a "least restrictive means" test, but must be "'generally necessary' to a legitimate governmental interest."

**MEMORANDUM DECISION AND ORDER - 8**

*Abbott*, 490 U.S. at 414. The detention, inspection, and censoring of mail by prison officials in order to uncover contraband has been held to further a legitimate penological interest. *Mann v. Adams*, 846 F.2d 589, 591 (9th Cir. 1988).

Carr alleges that Defendants Maddox and Woodland interfered with delivery of his mail on April 15, 2014 by opening, reading and confiscating the initial disclosures he received from the defendants in another case (*Carr v. Higgins et. al.* (Case No. 1:13-cv-00380-REB), which has subsequently been dismissed). In its order on the Amended Complaint, the Court explained that this claim cannot be classified as a "legal mail" claim because the mail was not subject to the attorney-client privilege. *Keenan v. Hall,* 83 F.3d 1083, 1094 (9th Cir. 1996), Dkt. 27, p.16. Thus, the Court allowed this claim to proceed as a general interference with mail claim, noting that Carr must show that prison officials regularly and unjustifiably interfered with his incoming mail. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("The inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) ("We have never held or suggested that an isolated, inadvertent instance of opening incoming confidential legal mail will support a § 1983 damage action"); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990). Carr has not come forward with any such evidence. Instead, Defendant Maddox's explanation regarding the delay in delivery of the mail shows just the opposite.

Maddox explains that on April 14, 2014, he was distributing legal mail on C-Block at IMSI, where Carr was housed. *Maddox Decl.*, ¶6, 73-12. Although the Court has since determined that the mail was not legal mail, Maddox nevertheless opened the mail

**MEMORANDUM DECISION AND ORDER - 9**

in Carr's presence in line with the legal mail guidelines. *Id.* While scanning it, he saw that it included attachments which may have been unauthorized for an inmate's possession, including copies of daily shift logs and print outs from the electronic database of records maintained by IDOC. *Id*. Uncertain of whether an inmate was allowed to possess this information, he and Carr went to the unit foyer to discuss the matter with the shift commander, Lieutenant Woodland. *Id.* Woodland instructed Maddox to contact the IMSI paralegal for guidance. *Id.,* ¶7; *Woodland Decl.,* ¶6, Dkt. 73-16. The paralegal asked to screen the documents to determine whether they implicated security or other concerns. *Id*. After the paralegal screened them, and determined they were okay to give to Carr, Maddox tried to deliver them to Carr. *Id.* Although Carr refused to accept them because he believed they had been tampered with, he has no basis in fact for this argument, and there is substantial evidence to the contrary – he ultimately received the documents in their entirety as determined by the court in that case. See Case No. 1:13-cv-00380-REB, Notice of Compliance Regarding Initial Disclosures, Dkt 42; Amended Notice of Service attached to Notice of Compliance Regarding Initial Disclosures as Exhibit A, Dkt. 42 at pp. 5-6. Under these circumstances, the Court will also dismiss the claims against Maddox and Woodland for failure to state a claim.

## ORDER

IT IS ORDERED:

1. Defendants' Motion for Summary Judgment, Dkt. 52, is **GRANTED**.
2. Defendants' Motion for Summary Judgment, Dkt. 73, is **GRANTED**.
3. Defendants' Motion for Leave to File Excess Pages, Dkt. 74, is **GRANTED**.

**MEMORANDUM DECISION AND ORDER - 10**

4. Plaintiff's Motion for Sanctions, Dkt. 57, is **DENIED**.

5. Plaintiff's Motion for Partial Summary Judgment, Dkt. 60, is **DENIED**.

6. Plaintiff's Motion for Entry of Judgment, Dkt. 68, is **DENIED**.

7. Plaintiff's Motion for Partial Summary Judgment, Dkt. 72, is **DENIED**.

8. Plaintiff's Motion for TRO, Dkts. 83, is **DENIED**.

9. The Court will enter a separate judgment in accordance with Fed.R.Civ.P. 58.

DATED: March 17, 2017

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 11**